**F.J. BREWERTON, Jerry Prock, and Gilberto de los Santos, Petitioners,**

v.

**Brent DALRYMPLE and Diane Marie Dalrymple, Respondents.**

No. 97–0944.

Supreme Court of Texas.

Argued Sept. 9, 1998.

Decided June 24, 1999.

3. *See* RESTATEMENT (SECOND) OF JUDGMENTS §§ 24, 25(1); *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 629–31 (Tex.1992).

Christopher Johnsen, Blake Ol Brodersen, David P. Boyce, Austin, for Petitioners.

Mark W. Robinett, John Judge, Austin, for Respondents.

Justice OWEN delivered the opinion of the Court.

When a state university terminated one of its professors, Brent Dalrymple, he and his wife Diane sued three of his colleagues in their individual and official capacities and the University of Texas System. The trial court granted summary judgment for the three individual defendants. A jury thereafter found for the University on all remaining claims, and the trial court rendered a final judgment against the Dalrymples. They appealed only the summary judgment for the individual defendants. The court of appeals reversed and remanded Brent Dalrymple's claim for intentional infliction of emotional distress, his claim for equitable relief based on alleged violations of the Texas Constitution, and Diane Dalrymple's claim for loss of consortium. We hold, as a matter of law, that the defendants' conduct was not extreme and outrageous. We further hold that Brent

Dalrymple did not preserve error in the court of appeals concerning his claim for equitable relief. Accordingly, we reverse the judgment of the court of appeals in part and render judgment that the Dalrymples take nothing.

**I**

Although some facts were in dispute, we consider the evidence in a light most favorable to the Dalrymples in reviewing the record. Brent Dalrymple was a tenure-track professor at the University of Texas—Pan American. He was subject to a six-year probationary period. At the end of each academic year, his progress was evaluated through a multi-tiered process, and a decision was made whether to renew his employment for the ensuing year. The individual defendants each participated in evaluating Dalrymple. They are Gilberto de los Santos, a peer professor; Jerry Prock, the department chair; and F.J. Brewerton, the business school dean.

Dalrymple in turn had certain oversight responsibilities as the chair of the business department's merit committee. In that capacity, he reviewed a request to recommend de los Santos for a merit raise. Dalrymple and his committee determined that de los Santos was ineligible for a raise, even though both Prock and Brewerton had supported the request.

During the next academic year (1991–1992), de los Santos evaluated Dalrymple negatively. Dalrymple had failed to publish articles, which was one of the University's professional achievement requirements. However, de los Santos did not give a similar negative evaluation to another professor who had also failed to publish. De los Santos did not recommend Dalrymple for tenure-track continuation, noting that his work on department committees was "less than satisfactory."

Dalrymple then wrote a letter to other faculty members, taking issue with de los Santos's comment regarding his committee work and suggesting that de los Santos was retaliating against him. Prock then directed Dalrymple not to disclose the contents of his tenure folder to others because that information was confidential. Similarly, Brewerton told Dalrymple that disclosing the contents of his tenure folder violated the University's policy. Dalrymple then asserted that his constitutional free speech rights had been violated, and he asked the University to remove Brewerton from his duties. Dalrymple also urged the district attorney to prosecute both Prock and Brewerton. Brewerton was not removed, and neither he nor Prock was prosecuted.

During this same time, Dalrymple's third-year tenure evaluation was ongoing. De los Santos had already negatively evaluated Dalrymple, and Prock and Brewerton subsequently recommended that Dalrymple should not be allowed to continue on tenure track, citing Dalrymple's failure to publish. However, the department tenure committee had recommended that Dalrymple should be allowed to continue on tenure track. These evaluations were then reviewed by the Vice President of Academic Affairs. The vice president gave Dalrymple another academic year to proceed with his publication requirements, noting that if progress were not made during his fourth year (1992–1993), then Dalrymple would be terminated at the end of the following year (1993–1994).

In his fourth year (1992–1993), Dalrymple was given a 15–hour teaching load, which he claims was excessive. He did not publish that year. The department tenure committee (including de los Santos), the department chair (Prock), the dean (Brewerton), and the Vice President for Academic Affairs all recommended that Dalrymple should not be allowed to continue on tenure track, again citing his failure to publish. Although Dalrymple appealed his nonrenewal under the University's procedures, he was terminated in May 1994.

Dalrymple sued the University of Texas System and three of his colleagues who had negatively evaluated him. He alleged

tortious interference with contract, intentional infliction of emotional distress, violation of the Whistleblower Act,[1] and violation of his Texas constitutional free speech and due process rights. His wife Diane Dalrymple also joined the suit, seeking recovery for loss of consortium.

The individual defendants moved for summary judgment based on official immunity and also attacked the merits of each of the Dalrymples' claims. The trial court granted summary judgment for those defendants in their individual capacities on all claims and causes of action. That partial summary judgment was not severed. Three days later, a trial on the Dalrymples' remaining claims commenced, and the jury found for the University. The trial court then rendered a final judgment. That judgment (1) noted the order that had granted summary judgment to the individual defendants "on all claims"; (2) rendered judgment for the University based on the jury's failure to find that the University discriminated against or terminated Dalrymple for either reporting alleged violations to authorities or exercising his free speech rights; and (3) found that Dalrymple's claim for equitable relief under the Texas Constitution failed and denied "any and all relief."

The Dalrymples appealed only the judgment for the individual defendants. The court of appeals affirmed in part.[2] It did not disturb the judgment with regard to the tortious interference claim.[3] But the court of appeals reversed and remanded (1) the issue of official immunity, holding that a fact question existed as to whether the defendants acted in good faith; (2) the intentional infliction of emotional distress claim, holding that a fact issue existed as to whether the defendants' conduct was extreme and outrageous; (3) Diane Dal-

rymple's loss of consortium claim; and (4) the claim for equitable relief based on alleged violations of the Texas Constitution.[4] In this Court, the individual defendants seek review of each of the court of appeals' adverse holdings. Because of our disposition of the claim for intentional infliction of emotional distress and the claim for equitable relief under the Texas Constitution, we do not consider the official immunity issue.

## II

The elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe.[5] The court of appeals held that "[i]t is reasonable to conclude that retaliating against Dalrymple for actively opposing illegal or improper activities, or for informing authorities of such activities, might have been extreme and outrageous" and remanded the claim.[6]

When this Court recognized a cause of action for intentional infliction of emotional distress, we adopted the parameters of that tort as set forth in the RESTATEMENT (SECOND) OF TORTS § 46(1).[7] The Restatement explains that the fact that an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been charac-

---

1. TEX. GOV'T CODE §§ 554.001–.010.

2. 949 S.W.2d 395, 395.

3. *Id.* at 405.

4. *Id.*

5. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993).

6. 949 S.W.2d at 404.

7. *See Twyman,* 855 S.W.2d at 621–22.

terized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.[8]

The conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "[9] The Restatement also provides, and this Court has held, that " '[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.' "[10]

In *Wornick Co. v. Casas*,[11] we considered a claim that the manner in which an employee was terminated raised a fact question of whether her employer had intentionally inflicted emotional distress. We held that, as a matter of law, the actions taken were not extreme and outrageous. We observed that "[t]ermination of an employee is never pleasant, especially for the employee."[12] We also expressed the concern that if the threshold for extreme and outrageous conduct were not sufficiently rigorous, "employers would be subjected to a potential jury trial in connection with virtually every discharge, and 'there would be little left of the employment-at-will doctrine.' "[13] .

■ Since the court of appeals' opinion in this case, we issued our decision in *Southwestern Bell Mobile Systems, Inc. v. Franco*.[14] In *Franco*, we considered whether the wrongful discharge of an employee, without more, could constitute in-

tentional infliction of emotional distress. We held that it could not. "[T]he mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous under the rigorous standard that we established in *Twyman*."[15]

The conduct about which Dalrymple complains does not rise to the level of extreme and outrageous conduct contemplated by section 46 of the RESTATEMENT (SECOND) OF TORTS and opinions of this Court applying it. The individual defendants made negative comments that were reflected in Dalrymple's tenure file, repeatedly recommended that Dalrymple should not be allowed to continue on tenure track, restricted his speech regarding the contents of his tenure folder, and allegedly assigned him an excessive case load. Even assuming that the defendants had retaliatory motives, their conduct as a matter of law does not go " 'beyond all possible bounds of decency' " and is not " 'utterly intolerable in a civilized community.' "[16]

The Dalrymples urge us to distinguish *Franco* from this case because *Franco* involved private sector employees and this case involves a public sector employee. But there is no reasonable basis for distinguishing between public and private employees in determining whether conduct surrounding an employee's termination amounts to intentional infliction of emotional distress. Dalrymple's intentional infliction of emotional distress claim fails as a matter of law.

8. RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965).

9. *Twyman*, 855 S.W.2d at 621 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).

10. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (1965)).

11. *Id.*

12. *Id.* at 736.

13. *Id.* (quoting *Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex.1992)).

14. 971 S.W.2d 52 (Tex.1998).

15. *Id.* at 54; *see Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993).

16. *Wornick*, 856 S.W.2d at 734 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).

The individual defendants have also challenged Diane Dalrymple's loss of consortium claim. That claim is wholly derivative of her husband's intentional infliction claim and fails with it.[17] Accordingly, it is unnecessary to review the court of appeals' conclusion that Brent Dalrymple's summary judgment proof of physical injury, such as headaches, is sufficient physical injury to support his wife's loss of consortium claim.[18]

## III

We next consider Dalrymple's claim for equitable relief under the Texas Constitution. The trial court granted summary judgment for the individual defendants "with respect to all claims and causes of action." That partial summary judgment was not severed, and the Dalrymples' remaining claims proceeded to trial. A jury failed to find that the University had terminated Brent Dalrymple or discriminated against him in retaliation for exercising his right of free speech. The trial court then rendered a final judgment, which recited: "Regarding Plaintiff's claim for equitable relief under the Texas Constitution, Art. 1 §§ 8, 19, the Court finds that Plaintiff's claim fails and hereby denies any and all relief requested by Plaintiff."

The Dalrymples did not complain in the court of appeals about this aspect of the trial court's judgment. The court of appeals nonetheless remanded the claim for equitable relief without any discussion or analysis.[19] That court had commented in a footnote during its recitation of the facts that the individual defendants' grounds for summary judgment did not include Dalrymple's equitable relief claim.[20] But the court did not discuss, or even acknowledge, that the trial court's final judgment disposed of Dalrymple's equitable relief claim against all defendants in all capacities.

The court of appeals erred in remanding Brent Dalrymple's claim for equitable relief. He was required to complain in the court of appeals about the trial court's adverse judgment disposing of his claim to preserve error.[21] He failed to do so. Because error was not preserved, we express no opinion on whether Brent Dalrymple could have sought equitable relief against the defendants in their individual capacities as distinguished from their official capacities.

\* \* \* \* \*

For the reasons considered herein, we reverse the court of appeals' judgment in part and render judgment that the Dalrymples take nothing.

---

17. *See Motor Express, Inc. v. Rodriguez,* 925 S.W.2d 638, 640 (Tex.1996) (noting that loss of consortium claims are derivative).

18. *Cf. Browning–Ferris Indus. v. Lieck,* 881 S.W.2d 288, 294 (Tex.1994) (holding that loss of consortium damages are not recoverable when the nonderivative claim did not result in physical injury).

19. 949 S.W.2d at 405.

20. *Id.* at 399 n. 1.

21. *See* Tex.R.App. P. 52, 49 Tex. B.J. 561 (1986, amended 1997) (currently Tex.R.App. P. 33).