In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-562 CV


____________________



KLEIN & ASSOCIATES POLITICAL RELATIONS, KLEIN


INVESTMENTS, SOUTHEAST TEXAS POLITICAL REVIEW, 


AND PHILIP R. KLEIN, Appellants



V.



PORT ARTHUR INDEPENDENT SCHOOL DISTRICT, AND WILLIE MAE


ELMORE, BOBBY FEEMSTER, DONALD FRANK, GREGORY FLORES, 


MATTIE LONDOW, AND RAY MEADOR, INDIVIDUALLY AND AS AGENTS 


FOR PORT ARTHUR INDEPENDENT SCHOOL DISTRICT, MELODY


THOMAS, AND WELLS, PEYTON, HUNT & GREENBERG, L.L.P., Appellees






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. A-163,290






OPINION


 Philip Klein publishes his commentary on local issues on an internet website entitled
the Southeast Texas Political Review. Klein's website article in April 2000 labeled that
year's prom at Thomas Jefferson High School in Port Arthur, Texas, as "TJ's Prom From
Hell" and quoted a source who described it as a "huge gang fight." The Port Arthur
Independent School District ("District") sued Klein & Associates Political Relations, Klein
Investments, Inc., Southeast Texas Political Review, and Philip R. Klein (collectively
"Klein") for defamation. This court affirmed a summary judgment in favor of Klein on
the District's defamation cause of action. See Port Arthur Indep. Sch. Dist. v. Klein, 70
S.W.3d 349, 353 (Tex. App.--Beaumont 2002, no pet.). 

 Klein filed a countersuit against the District, the members of the school board
("Trustees"), and the District's original attorney and her law firm ("Attorneys"). Klein
sued the District and the Attorneys for abuse of process, negligence, intentional infliction,
negligent infliction, conspiracy, free speech and free press under the Texas and United
States constitutions, violations of 42 U.S.C. § 1983, tortious interference, and official
oppression. In addition, he sued the Attorneys for what he calls "attorney misconduct"
and the District (through its Trustees) for defamation. Essentially, Klein complained of
the District's lawsuit and public statements by the Trustees. 

 The trial court severed Klein's countersuit from the District's original suit. Klein's
claims were not part of the prior appeal but are the subject of this appeal. This appeal is
from a summary judgment granted in favor of the District, the Trustees, and the Attorneys
on the various causes of action Klein asserted against them. Klein brings ten issues to this
court.

Denial Of A Continuance


 Klein first contends the trial court erred in denying his motion for continuance. He
essentially presents three arguments as to why the trial court should have granted his
continuance motion: (a) Klein requested and was refused depositions of persons with
knowledge of relevant facts; (b) appellees hindered discovery by raising attorney-client and
work-product privileges during the depositions of attorneys Melody Thomas and Emily
Linker; and (c) appellees used as summary judgment evidence certain information earlier
claimed to be privileged. Klein argues appellees' conduct during discovery denied him the
time necessary to secure information he considers fundamental to his case. 

 Whether to allow more time for discovery prior to ruling on a motion for summary
judgment is within a trial court's discretion. Tenneco Inc. v. Enterprise Prods. Co., 925
S.W.2d 640, 647 (Tex. 1996). In ruling on a request for additional time, the trial court
may consider a litigant's failure to diligently utilize the rules of procedure for discovery. 
See State v. Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988). A reviewing
court will not disturb a trial court's denial of a continuance unless the trial court 
committed a clear abuse of discretion. BMC Software Belgium, N.V. v. Marchand, 83
S.W.3d 789, 800 (Tex. 2002). An abuse of discretion occurs when the trial court reaches
a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of
law. Id. 

 The record reflects the following: 

 The District sued Klein in July 2000. 

 Klein sued the District, Trustees, and Attorneys in November 2000. 


 In January 2001, Klein wrote appellees and suggested that a ruling be
obtained from the trial court on the issue of privileges to be asserted by 
attorney Melody Thomas and that shortly after the ruling her deposition
should be taken. 


 On January 23, 2001, the District filed a motion for partial summary
judgment. 


 On February 13, 2001, Klein filed a motion to compel discovery. The
motion asked the trial court to find that a claim of privilege (which Klein
anticipated would be asserted by Attorney appellees) would not apply to the
Attorneys' research and investigation on the claims the District had asserted
against Klein. 


 On February 27, 2001, the district court granted a partial summary judgment
in favor of the District on some of Klein's causes of action. 


 The Attorneys filed their summary judgment motion on March 7, 2001. 


 In a letter dated April 27, 2001, appellees agreed with Klein's January 24,
2001, letter that, because Ms. Thomas would assert the attorney-client
privilege, it would be advisable to have the court rule on the privilege issue
prior to the deposition. 


 Although appellees continued to suggest that a prior ruling should be
obtained, Klein apparently decided otherwise. In a letter to appellees Klein's
attorney stated, "[T]he motion to compel is my request for relief. No other
parties, including PAISD, have any standing to assert my right to relief nor
does any other party have any right to a ruling on my motion." 


 In a letter dated April 27, 2001, Klein indicated he was certain he would 
want to depose the Trustees.


 In May 2001, Klein filed a "Motion for Continuance of Ruling on [the
motion to compel] and First Supplement to Motion to Compel."


 In May 2001, the trial court granted summary judgment in favor of Klein on
the District's defamation suit against Klein.


 On July 12, 2001, Klein took the deposition of Ms. Thomas, who, as 
predicted by Klein and appellees, asserted the attorney-client and work
product privileges in response to certain questions.


 In July 2001 Klein requested the depositions of Dwight Wagner, assistant
principal at Thomas Jefferson High School and Willie Mae Elmore, a school
board trustee. Appellees suggested two different weeks during which they
would be available for depositions. The record does not contain any more
references to the depositions until November 6, 2001, when appellant asked
in correspondence that those depositions, along with a second deposition of
Ms. Thomas, be conducted on November 30, 2001, after the hearing
scheduled on the summary judgment motion. (1) 


 On October 12, 2001, the District filed its motion for summary judgment,
having earlier obtained a partial summary judgment in its favor. 


 On November 28, 2001, Klein again filed a motion for continuance and
motion to compel. 


 After conducting the summary judgment hearing on December 7, 2001, the
trial court signed orders granting judgment in favor of the District, the
Trustees, and the Attorneys. Klein's lawsuit had been on file for over a
year.


Klein characterizes appellees' conduct as an adamant refusal to permit discovery of the
information he sought. The record does not bear that out. Klein had a year to conduct
discovery. Further, the record does not indicate appellees refused to allow him to depose
Melody Thomas, Emily Linker, the Trustees, or school personnel. Nothing in the record
indicates that, prior to the December 7, 2001 hearing on appellees' motion for summary
judgment, Klein obtained a ruling or a hearing on his motions to compel and motions for
continuance. When pressed by appellees about obtaining rulings, Klein maintained the
motions were his and he was the only one with standing to obtain a ruling on them. 
Similarly, the record reveals Klein did not effectuate his stated intention of taking the
Trustees' depositions. Though Klein indicated he wanted to depose the Trustees, and
specifically requested the depositions of assistant principal Dwight Wagner and trustee
Willie Mae Elmore, there is nothing in the record to indicate he sent notices scheduling
their depositions or responded to appellees' offer to schedule the depositions. 

 The Texas Supreme Court has explained that "[b]ecause the party requesting
discovery is in the best position to evaluate its need for information . . . , the orderly
administration of justice will be better served by placing responsibility for obtaining a
hearing on discovery matters on the party requesting discovery." McKinney v. Nat'l Union
Fire Ins. Co. of Pittsburgh, Pennsylvania, 772 S.W.2d 72, 75 (Tex. 1989). Klein did not
present the discovery issue to the trial judge until December 7, 2001, the day of the
summary judgment hearing. Under the circumstances in this case, the trial court was not
required to reschedule the hearing. 

 Klein also contends the affidavits attached to the District's motion for summary
judgment contain information that appellees previously claimed was privileged -- 
statements relating to the intentions of appellees in instituting suit against him, names of
persons with knowledge of relevant facts, and contents of conversations between appellees
and various persons. The attorneys declined to testify concerning privileged information. 
But nothing in the affidavits refers to attorney communications, work, or advice -- areas
potentially privileged from discovery. Klein gives no indication of when and under what
circumstances the affiants' information as stated in the affidavits was asserted to be
privileged. He did not take the depositions of the Trustees or others who signed the
affidavits. The record does not indicate privileges were asserted by the affiants concerning
the statements made in their affidavits. Under the circumstances presented, the trial court
did not abuse its discretion in denying the continuance. 

Klein's Objections to Appellees' Summary Judgment Evidence


 Klein argues the trial court erred in overruling his objections to the District's
summary judgment evidence. He first claims the District cannot use as summary judgment
evidence the affidavits of the Trustees, the principal, and the assistant principal of Thomas
Jefferson High School because of the appellees' abuse of the discovery process; he argues
the doctrine of waiver by offensive use. In describing the "discovery abuse," Klein says
he repeatedly and unsuccessfully attempted to discover the information that appellees later
presented in affidavit form in support of their summary judgment motion. As we have
discussed above, the record does not reflect appellees abused the discovery process. The
trial court did not err in failing to strike the affidavits on this ground.

 Klein also maintains the affidavits offered by the District contain hearsay. The
Trustees recited in their affidavits that Jimmy Wyble, the principal, Dwight Wagner,
assistant principal, parents, teachers, and students informed the Trustees that no fights took
place. The Trustees' accounts of what they had been told were not offered solely to prove
that no fights occurred, but to show information the Trustees had before them when they
decided to approve the filing of a lawsuit against Klein. See, e.g., Butler v. Hide-a-Way
Lake Club, Inc., 730 S.W.2d 405, 410-11 (Tex. App.--Eastland 1987, writ ref'd n.r.e.)
(Board of Directors' summary judgment affidavits setting forth the reasons for the board
members' actions were offered to prove the good faith of the board members, not the truth
of the matters asserted, and were not hearsay.). The Trustees' statements as to their own
beliefs regarding reports from others about the prom, and the Trustees' reasons for filing
the lawsuit against Klein, are not hearsay.

 Klein also argues the affidavit of principal Wyble contains conclusory and self-serving statements. See generally Progressive County Mut. Ins. Co. v. Carway, 951
S.W.2d 108, 117 (Tex. App.--Houston [14th Dist.] 1997, writ denied). But Wyble
attended the prom and could relate what he knew -- including his observation that there
were no fights or disturbances of any kind. And we disagree with Klein's assertion that
the affidavits of Wyble and the Trustees are not the type of statements that can be readily
controverted. Klein could have taken the depositions of witnesses, including the school
administrators, the Trustees, or anyone attending the prom. His complaints on appeal
concerning the affidavits are overruled. 

Governmental Immunity


 The District moved for summary judgment based on the doctrine of governmental 
immunity, or sovereign immunity, from tort liability. Klein contends the District is not
protected by governmental immunity; he says the alleged tortious actions do not involve
the carrying out of governmental functions. He argues that the District's actions were not
legal exercises of authority. He bases his argument on the fact that at the time the trial
court rendered summary judgment on the District's immunity defenses, the trial court had
already determined that the District's actions were prohibited by the First Amendment to
the United States Constitution. For this reason, Klein says the District was not engaged
in governmental functions when it sued him and, therefore, the District was not entitled
to immunity.

 The bar of governmental immunity is a creature of common law and not of any
legislative enactment. Texas A & M Univ. - Kingsville v. Lawson, 87 S.W.3d 518, 520
(Tex. 2002) (sovereign immunity). The doctrine encompasses two principles -- immunity
from suit and immunity from liability. Travis County v. Pelzel & Associates, Inc., 77
S.W.3d 246, 248 (Tex. 2002). The question here is whether the District is immune from
liability. 

 The Texas Education Code authorizes suit by a school district through its trustees. 
Tex. Educ. Code Ann. § 11.151(a) (Vernon 1996). ("The trustees of an independent
school district . . . in the name of the district may . . . sue and be sued . . . ."). The
Trustees, acting for the District, have the exclusive power and duty to govern and oversee
the management of the public schools of the District. See Tex. Educ. Code Ann. §
11.151(b) (Vernon 1996). That the District's suit -- which essentially argued for what
would have required a change in the law -- was ultimately determined to be without merit
does not render the filing and maintenance of suit on behalf of the District as something
other than a statutorily authorized function. 

 Governmental immunity protects the District from liability for conduct that might
otherwise be actionable as tortious. As a governmental unit, the District is immune from
liability for tortious conduct unless the immunity has been waived. See LeLeaux v.
Hamshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 51 (Tex. 1992); see also Barr v.
Bernhard, 562 S.W.2d 844, 846 (Tex. 1978) ("[A]n independent school district is an
agency of the state and, while exercising governmental functions, is not answerable for its
negligence in a suit sounding in tort."). Klein cites no waiver of immunity. The Texas
Tort Claims Act does not waive immunity for the claims asserted here. See Tex. Civ.
Prac. & Rem. Code Ann. § 101.051 (Vernon 1997); see also Austin Indep. Sch. Dist. v.
Gutierrez, 54 S.W.3d 860, 863 (Tex. App.--Austin 2001, pet. denied). We conclude the
District retains governmental immunity from liability. 

 To the extent Klein asserts claims against the Trustees solely in their official
capacities, the claims are in reality against the District. The immunity available to
government officials sued solely in their official capacity is the same as that available to
the governmental entity. See Bates v. Dallas Ind. Sch. Dist., 952 S.W.2d 543, 551 (Tex.
App.--Dallas 1997, writ denied). 

Causes of Action Against Trustees In


Individual Capacities



 Klein alternatively sued the Trustees in their individual capacities, claiming they
were personally liable for defamation, abuse of process, negligence, tortious interference,
intentional infliction of emotional distress, and violations of free speech/free press
constitutional rights. (2) "Government employees are entitled to official immunity from suit
arising from the performance of their (1) discretionary duties in (2) good faith as long as
they are (3) acting within the scope of their authority." City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994). Klein claims fact issues preclude application of the
official immunity defense here. 

 We need not address the Trustees' official immunity defense from personal liability.
Appellees' motions also addressed the merits of each of the claims. For the reasons we
explain below, we hold the trial court properly granted summary judgment on the merits
of each cause of action. 

Defamation Claim


 We first consider Klein's defamation cause of action. To maintain a defamation
claim, a plaintiff must prove the defendant (1) published a statement, (2) that was
defamatory concerning the plaintiff, (3) while acting with either actual malice, (if the
plaintiff was a public official or public figure) or negligence (if the plaintiff was a private
individual), regarding the truth of the statement. WFAA-TV, Inc. v. McLemore, 978
S.W.2d 568, 571, 574 (Tex. 1998). A defendant is entitled to summary judgment if the
defendant negates the element of actual malice. Id. Klein says he is a limited-purpose
public figure; as one, actual malice is an element of his cause of action. See id. at 573. 

 In McLemore, the Texas Supreme Court explained the element of actual malice as
follows:

 Actual malice is a term of art, focusing on the defamation defendant's
attitude toward the truth of what it reported. Actual malice is defined as the
publication of a statement 'with knowledge that it was false or with reckless
disregard of whether it was false or not.' Reckless disregard is also a term
of art. To establish constitutional recklessness, a defamation plaintiff must
prove that the publisher 'entertained serious doubts as to the truth of his
publication.' 


Id. at 573-74. (citations omitted). In McLemore the defendants negated the actual malice
element by filing an affidavit detailing the reporter's belief in the truth of the reports. See
id. at 574. Similarly, the Trustees in this case filed affidavits that evidenced their beliefs
the reported fight at the prom did not occur and the Klein report was false. These
assertions detail their beliefs in the truth of their allegedly defamatory statements. Klein
filed affidavits of his belief that a fight did occur at the prom and that the report he wrote
was truthful. But the fact that Klein believed his own report offers no support for a claim
that the Trustees' public statements were motivated by actual malice. 

 Klein also offered an affidavit of Mark Faggard, an attorney, who described a
conversation he had with Melody Thomas, one of the attorneys representing the District. 
According to Faggard, he told Ms. Thomas the District's suit against Klein was meritless;
he said she told him she was not sure how long the trial judge would let the case continue. 
Faggard interpreted her "tone" to mean she knew the case was probably without merit. 
Faggard acknowledged in his affidavit that he had previously been Klein's attorney in
litigation with other members of Thomas's law firm. Even if we impute Thomas's view
of the case to the Trustees, Faggard's affidavit does not raise a fact issue as to whether
Thomas herself thought the suit had no merit. The affidavit recounts his interpretation of
her tone of voice, and his speculation does not raise a fact issue on actual malice.

 In this controversy, Klein had a remedy for criticisms of his report through the
publication of a rebuttal. The Trustees had a remedy for Klein's criticism through
issuances of public statements. They chose to exercise this First Amendment right by
responding publicly to Klein's public criticism. No evidence effectively counters the
Trustees' affidavits stating their beliefs that the Klein report was false; Klein offered no
evidence suggesting that Trustees had any doubt their own statements were true. The
Trustees' affidavits negated the element of actual malice. Because the record reflects that
the Trustees' public criticisms of Klein were not motivated by actual malice, the trial court
properly granted summary judgment on Klein's defamation claims. 

Intentional Infliction of Emotional Distress


 We next consider Klein's intentional infliction of emotional distress cause of action. 
The elements of intentional infliction are: "(1) the defendant acted intentionally or
recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused
the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was
severe." See Brewerton v. Dalrymple, 997 S.W.2d 212, 215 (Tex. 1999) (citing Twyman
v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993)). Klein argues on appeal that the Trustees
were aware their public statements were false and there was no legal basis for filing the
District's suit.

 The question of whether conduct is "extreme and outrageous," sufficient to support
an intentional infliction claim, is initially a question of law for the court. Motsenbocker
v. Potts, 863 S.W.2d 126, 132 (Tex. App.--Dallas 1993, no writ). The Texas Supreme
Court has relied on Restatement (Second) of Torts § 46(1). See Brewerton, 997
S.W.2d at 216. Comment d. to that provision explains that the conduct must be "so
outrageous in character, and so extreme in degree, as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly intolerable in a civilized
community." Id.; Restatement (Second) of Torts § 46 cmt. d (1965). The District,
through its Trustees, sought to defend the District's reputation by exercising its ability to
sue. See Tex. Educ. Code Ann. § 11.151(a) (Vernon 1996). In making public
statements, the Trustees exercised the right of free speech. Under the Restatement
standard, as a matter of law neither the lawsuit nor the public comments of the Trustees
constituted extreme and outrageous conduct sufficient to support a cause of action for
intentional infliction of emotional distress. 

 True, the suit filed by the District had no legal merit. See Port Arthur Indep. Sch.
Dist., 70 S.W.3d 349. But the act of filing a lawsuit -- one which essentially asks for what
would be a change in the law -- does not go beyond all possible bounds of decency so as
to be regarded as atrocious and utterly intolerable in a civilized community. See generally
Brewerton, 997 S.W.2d at 216 (quoting Restatement (Second) of Torts § 46 cmt. d);
see generally Guzman v. Guzman, 827 S.W.2d 445, 448 (Tex. App.--Corpus Christi
1992), writ dism'd; improv. granted, 843 S.W.2d 486 (Tex. 1992) (legitimate argument
for change in existing law permissible). Essentially, we hold the intentional infliction of
emotional distress cause of action is not the proper remedy under these circumstances. 
This does not mean there is no remedy for wrongful litigation; for example, a malicious
prosecution claim may provide a remedy under appropriate circumstances, but that cause
of action -- with its own specific proof requirements -- was not asserted here. The trial
court properly granted summary judgment on the intentional infliction claim. 

Abuse of Process


 Like many of Klein's other causes of action, the basis for his abuse of process claim
against the Trustees in their individual capacities is the filing and continuation of the
lawsuit. But by definition the abuse of process tort is not based on the filing and
maintenance of a suit. Blackstock v. Tatum, 396 S.W.2d 463, 467 (Tex. Civ. App.--
Houston 1965, no writ). Abuse of process has to do with the improper use of the process
after it has been issued. Graham v. Mary Kay Inc., 25 S.W.3d 749, 756 (Tex. App.--Houston [14th Dist.] 2000, pet. denied). If the process is used for the purpose for which
it was intended, even though accompanied by an ulterior motive, no abuse of process
occurs. Id. Rather than being grounded in improper use of process, Klein's claim is based
on the filing and maintaining of a suit, which does not, as a matter of law, constitute abuse
of process. A claim that a suit was wrongfully filed and maintained is properly brought
as a malicious prosecution claim, a claim not pleaded here. This issue is overruled. 

Negligence


 Klein argues an issue of material fact exists concerning negligent conduct. 
Appellees point out that the negligence claim is based on the same factual allegations -- the
filing of suit and the public statements -- as the other tort claims and is merely a "re-labeled" claim. We agree. Texas courts discourage the fracturing of one cause of action
into several. See Sledge v. Alsup, 759 S.W.2d 1, 2 (Tex. App.--El Paso 1988, no writ). 
If a party files a claim in the context of allegations of the wrongful filing of a lawsuit, the
appropriate cause of action is a malicious prosecution claim. See ITT Consumer Fin.
Corp. v. Tovar, 932 S.W.2d 147, 155-56 (Tex. App.--El Paso 1996, writ denied). A party
"cannot avoid the strict elements of a malicious prosecution action by labeling it
negligence." Id. And allegations of defamation are properly brought as a defamation
claim, which would include here, as we have stated, the element of actual malice. As a
matter of law, the negligence action is not proper. Moreover, on appeal Klein did not
address this ground -- inapplicability of a negligence claim -- and has waived it. This issue
is overruled. 

Tortious Interference


 Klein construes that portion of the summary judgment motion on tortious
interference as a no-evidence motion, as do we. Appellees challenge the "intent" element
of the tortious interference claim. See generally Prudential Ins. Co. of America v.
Financial Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000) (elements of tortious
interference). Klein relies on the affidavits attached to the motion for summary judgment
where at least one of the Trustees indicated he had visited Klein's website after being
informed of the contents of the article. Klein further points out that his deposition shows
he has engaged in a variety of business operations in the local area and that, based on
Faggard's affidavit, appellees were aware their claims lacked merit. We have already
considered Faggard's affidavit and concluded it raises no fact issue regarding appellees'
knowledge or intent. The fact that one of the Trustees visited Klein's website where the
article was published does not raise a fact issue on intent to tortiously interfere with
business relations. See Tex. R. Civ. P. 166a(i); Boales v. Brighton Builders, Inc., 29
S.W.3d 159, 164 (Tex. App.--Houston [14th Dist.] 2000, pet. denied). This issue is
overruled.

 Free Speech and Free Press


 Klein claims the Trustees' conduct violated his constitutional rights of free speech
and free press under the First Amendment to the United States Constitution. Essentially
Klein maintains appellees retaliated against him for his statements concerning the prom by
suing him and thereby abridging his First Amendment rights.

 In a case involving a website publication, the federal Tenth Circuit Court of Appeals
in Smith v. Plati dealt with a claim that a university, its officials, and a university
employee retaliated against Smith for exercising his freedom of speech. See Smith v. Plati,
258 F.3d 1167, 1176-77 (10th Cir. 2001). Smith operated a website that provided
information on the university's athletic teams. Id. At 1172. He claimed the university in
various ways interfered with his news gathering efforts. Id. The court held that a plaintiff
must prove the plaintiff's engagement in a constitutionally protected activity and the
defendant's improper motivation in suing plaintiff because of plaintiff's exercise of his
First Amendment rights. The Smith court also held plaintiff must prove that "the
defendant's actions caused the plaintiff to suffer an injury that would chill a person of
ordinary firmness from continuing to engage in that activity[.]" Id. at 1176 (citing Worrell
v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)); see also Spear v. Town of West Hartford,
954 F.2d 63, 67-68 (2nd Cir. 1992). 

 Nothing in the record in this case indicates the District's suit or the Trustees'
conduct operated to "chill" the continued publication of Klein's website. To the contrary,
the evidence submitted by appellees shows that Klein continued to publish stories on the
website concerning the District and its lawsuit. Since Klein's evidence does not raise a fact
issue on the injury element, his claim for violation of his First Amendment rights cannot
be sustained. See Dallas Indep. Sch. Dist. v. Finlan, 27 S.W.3d 220, 242-44 (Tex. App.--Dallas 2000, pet. denied)("The Fifth Circuit has ruled that there is no clearly established
right to claim a First Amendment violation from the filing of a civil lawsuit, even one
alleged to be malicious prosecution, in retaliation for the exercise of free speech rights.")
(citing Johnson v. Louisiana Dep't of Agriculture, 18 F.3d 318 (5th Cir. 1994)). The trial
court properly granted the motion for summary judgment on the First Amendment claim. 


 Klein also contends the appellees were not entitled to summary judgment on Klein's
federal claims because they did not move for summary judgment on both Klein's federal
constitutional claims and his claim under 42 U.S.C. § 1983 (2002). In his pleadings, Klein
claims appellees interfered with his free speech and free press rights "in accordance with
the United States Constitution generally and 42 U.S.C. § 1983, specifically." We construe
the summary judgment motions to encompass both. We overrule this issue. 

Attorneys' Summary Judgment


 Klein sued the Attorneys for abuse of process, constitutional violations, "attorney
misconduct," negligence, intentional infliction of emotional distress, tortious interference
with business relations, official oppression, official oppression per se, and conspiracy. 
Klein also includes a reference in his rendition of the "facts" to the Attorneys' "fictitious
and/or fraudulent" filing of a suit against him. On appeal, Klein does not challenge the
dismissal of the causes of action relating to official oppression or conspiracy, and we do
not consider them. 

 The Attorneys sought a no-evidence summary judgment on abuse of process,
constitutional violations, "attorney misconduct," negligence, and intentional infliction of
emotional distress. They also filed a traditional motion, which is global and covers all
Klein's causes of action. The trial court dismissed all of Klein's causes of action against
the Attorneys. 

 Klein challenges the no-evidence summary judgment only on the grounds that
discovery was "significantly incomplete" at the time of rendition of judgment and contends
the trial court should have granted his continuance rather than granting summary judgment. 
We have already considered Klein's continuance issue and found that the trial court did not
err in denying his request for a continuance. He raises no other issues regarding the no-evidence summary judgment. See San Jacinto River Auth. v. Duke, 783 S.W.2d 209, 209-10 (Tex. 1990). Consequently, the summary judgment is not erroneous as to the abuse of
process, constitutional violations, "attorney misconduct," negligence, and intentional
infliction of emotional distress causes of action.

 The Attorneys urge that as a matter of law a litigant may not sue opposing counsel
for actions taken in representing a client. (3) In his response to the summary judgment
motion, Klein claims the Attorneys committed fraud on the court, as well on himself, by
pursuing legal action against Klein that is based on "factual and/or legal grounds that [the
Attorneys] knew to be fictitious." Klein argues the grounds are fictitious and fraudulent
because the government "can not maintain a cause of action for defamation for statements
criticizing government, even if the alleged defamatory statements are false." The elements
of a fraud cause of action are: "(1) that a material representation was made; (2) the
representation was false; (3) when the representation was made, the speaker knew it was
false or made it recklessly without any knowledge of the truth and as a positive assertion;
(4) the speaker made the representation with the intent that the other party should act upon
it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered
injury." In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001). 

 As a general rule, a nonclient cannot sue an attorney for malpractice. Malone v.
Abrahams, Watkins, Nichols & Friend, No. 01-99-01192-CV, 2002 WL 1722337, at *5
(Tex. App.-- Houston [1st Dist.] 2002, no pet. h.) (not yet released for publication). Klein
was not a client of the Attorneys. The Texas Supreme Court has recognized a negligent
misrepresentation claim by a nonclient under appropriate circumstances. See McCamish,
Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 794 (Tex. 1999). 
But the Court noted "Generally, courts have acknowledged that a third party's reliance on
an attorney's representation is not justified when the representation takes place in an
adversarial context." Id. An attorney has a duty to zealously represent the attorney's
client within the bounds of the law. Malone, 01-99-01192-CV, 2002 WL 1722337, at *5. 
In fulfilling that duty an attorney may raise a legitimate argument to a court for a change
in existing law, without thereby subjecting the attorney to liability to the opposing party. 
See generally Guzman, 827 S.W.2d at 448. 

 Klein submits that his response to the Attorneys' summary judgment motion, with 
Faggard's affidavit, raises a fact issue on attorney misconduct constituting fraud. We have
already discussed Faggard's affidavit herein and concluded his belief that Melody Thomas
knew the suit was frivolous is based on surmise and speculation. Klein presented no
evidence raising a fact issue on a claim based on fraud or other attorney misconduct against
the Attorneys. 

 An attorney can be punished for wrongful conduct while representing a party in a
lawsuit. Bradt v. West, 892 S.W.2d 56, 72 (Tex. App.--Houston [1st Dist.] 1994, writ
denied). As pointed out in Bradt, the law provides for punishment of such acts in Tex.
R. Civ. P. 13 (power to punish attorney for filing improper pleadings, motions, and "other
papers"); Tex. R. Civ. P. 215 (power to punish attorney for abusing discovery); and Tex.
Gov't Code Ann. § 21.002 (Vernon Supp. 2003) (power to punish attorney for contempt
of court). See Bradt, 892 S.W.2d at 72. Under appropriate circumstances, the party
seeking sanctions may also rely on sections 9.012 or 10.004 of the Texas Civil Practices
and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §§ 9.012, 10.004 (Vernon
2002). However, no issue regarding sanctions presented to the trial court is asserted in
this appeal. We previously denied a request for sanctions based on the District's appeal
of the summary judgment against the District. See Port Arthur Indep. Sch. Dist., 70
S.W.2d 349. 

 Appellant's issues are overruled. The judgment of the trial court is affirmed.

 AFFIRMED.


 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on August 22, 2002

Opinion Delivered December 19, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. The hearing did not take place until December 7, 2001. 
2. Although Klein sued the Trustees in their individual capacities on additional causes
of action, we consider only those he has presented on appeal.
3. The motion for summary judgment encompasses Klein's tortious interference cause
of action. Klein does not present, as to the Attorneys, the tortious interference claim on
appeal. Consequently, he has waived it.