**AFFIRM; and Opinion Filed March 6, 2023**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00448-CV

**MEOSHA JACKSON, Appellant**
**V.**
**HEAD START OF GREATER DALLAS, INC., Appellee**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-19136**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Rosenberg[1]
Opinion by Justice Rosenberg

Appellant Meosha Jackson appeals the trial court's order granting summary

judgment in favor of appellee Head Start of Greater Dallas, Inc. (Head Start) on

Jackson's intentional or reckless infliction of emotional distress claim. In two issues,

Jackson contends the trial court erred in granting Head Start's traditional summary

judgment motion because the motion lacked supporting evidence and, as to Head

Start's affirmative defense of preemption, lacked a factual and legal basis. In a third

issue, Jackson contends the trial court erred in granting Head Start's no-evidence

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned.

summary judgment motion because she presented evidence of the elements of her claim, including outrageous conduct, severe emotional distress, intentionality or recklessness in the outrageous conduct, and proximate causation. For the following reasons, we affirm.

## Background

In 2018, Head Start employed Jackson as a health assistant. In that position, she educated parents of Head Start students on health issues and conducted enrollments and screenings. Breana Henderson, a health specialist, had been Jackson's supervisor for over a year. Dorruth Boyd, a Head Start health service manager, was Henderson's supervisor and the director of Jackson's department.

According to her deposition testimony, Jackson went to Henderson's office to deliver some notices during the workday on June 27, 2018. Jackson thought the office was empty; the door was closed and she did not recall seeing lights. Upon entering the office, Jackson observed Henderson and another health assistant engaged in a consensual sexual encounter. Everyone jumped; Jackson immediately walked out, closing the door behind her. She was "embarrassed" and "scared." Several days later, Henderson spoke to Jackson about the incident and Henderson's conduct. Jackson was offended by the lack of "decency" and "decorum" of someone having sex in the office.

Henderson testified by deposition that neither the June 27 incident nor the subsequent discussion occurred.

According to Jackson, Henderson began to find fault with Jackson after the June 27 incident. Nothing had changed in Jackson's work performance, but Henderson would "poke around" and find things Jackson had not done and text or email Jackson. Henderson also investigated Jackson's use of leave under the Family and Medical Leave Act and adjusted the screening and enrollment schedules in ways that Jackson believed were unfair. Henderson made sarcastic remarks about Jackson being available to attend scheduled meetings.[2] Jackson also believed Henderson's November 2018 annual review of Jackson was unfair.

Jackson testified that Boyd was not receptive to Jackson's complaints about Henderson and squelched any discussion of the June 27 incident. On August 14, 2018, Jackson approached Boyd to discuss some issues Jackson had with Henderson, but Boyd cut Jackson off and said they would need to have a meeting for Jackson to voice her concerns. Boyd, however, never scheduled the meeting.

On September 20, 2018, Jackson called Boyd to discuss a disagreement she and Henderson had over the screening schedule. Boyd advised that they "figure it out." During the call, Jackson told Boyd that Henderson and the other health assistant were "messing around." Boyd, however, hung up.

After receiving her annual review in November 2018, Jackson complained to Boyd that Henderson had been "abusing her supervisory role." Jackson "screamed

---

[2] Jackson also complained of a remark by Boyd. Specifically, Boyd commented on Jackson's lack of questions during a meeting, despite having told Jackson before the meeting "not to ask stupid questions."

at [Boyd] and was telling her that . . . all of this stuff is going on because [Jackson] caught" Henderson "in a sex act." Before Jackson could explain, Boyd cut her off and explained that they needed to have a meeting with everyone involved. Again, no meeting was scheduled.

In April 2019, Henderson prepared an action plan for Jackson. The action plan, which Jackson considered a "write-up," noted issues with (1) interpersonal relationships with Head Start families and other employees; (2) recordkeeping procedures; (3) adhering to the enrollment schedule; and (4) attendance. Jackson disagreed with the plan. Further, Henderson would not provide information to help Jackson correct any deficiencies. Noting that she had never been written up before, Jackson believed Henderson "needed [Jackson] gone," as did Head Start. Jackson also believed Henderson and/or Head Start had an obligation to report the June 27 incident.

In August 2019, Jackson and Henderson had a lengthy email exchange. Jackson forwarded the email exchange to Boyd along with a request to change supervisors. As a result of the exchange, Boyd wrote up both Henderson and Jackson, noting a need to improve their handling of interpersonal relationships. The three women also had a meeting. Boyd denied Jackson's request for a supervisor change because there was "no objective evidence of a stressful environment." Jackson testified that she explained the problems had arisen because she "caught" Henderson and the other health assistant having sex. Henderson responded that "she

–4–

wanted all the lies to stop." Jackson suggested that Boyd "pull up the cameras" and do an investigation; Boyd responded that she would have to investigate both Henderson and Jackson.

In a note about the meeting, which Jackson wrote shortly thereafter, she made no mention of the June 27 incident or her efforts to explain the incident to Boyd. Both Boyd and Henderson disputed that Jackson discussed the June 27 incident during the meeting. According to Henderson, Jackson referred to Henderson and the other health assistant but did not elaborate when Henderson asked Jackson what she meant. Boyd testified that she did not receive any notice of sexual activity between Henderson and the other health assistant prior to October 2019.

Jackson left her employment with Head Start in October 2019 because she "had had enough." She did not recall what occurred that day to make her leave, but testified that she "had enough of all of the intimidation, being angry, crying, upset, [and] uncertainty."

In December 2019, Jackson filed this suit against Head Start, alleging that she was the victim of an intentional or reckless infliction of emotional distress arising out of the sexual conduct she observed and the subsequent conduct of Henderson and Boyd. Head Start filed a combination traditional and no-evidence summary judgment motion, asserting Jackson could not establish, or had no evidence to raise a fact issue, that (1) Head Start's conduct was extreme and outrageous, (2) the emotional distress Jackson suffered was severe, or (3) Jackson had no alternative

cause of action that would provide her with a similar remedy. The trial court held a telephonic hearing on the motion. Thereafter, the trial court entered an order granting Head Start's motion and dismissing Jackson's claim with prejudice. This appeal followed.

## Standard of Review

"After adequate time for discovery, a party . . . may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). The nonmovant has the burden to produce summary judgment evidence raising a genuine issue of material fact as to each challenged element of its claim or defense. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

We review a no-evidence summary judgment under the same legal sufficiency standards as directed verdicts. *Id*. We consider the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Id*. We sustain a no-evidence challenge "when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or

(d) the evidence conclusively establishes the opposite of the vital fact." *Id.* (citations omitted).

If a defendant files a combination traditional and no-evidence motion for summary judgment, we first review the summary judgment under the no-evidence standard. *E.g.*, *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If, as in this case, the trial court does not specify its ground for granting the summary judgment motion, we must affirm its decision if any ground presented to the court and preserved for appellate review is meritorious. *Merriman*, 407 S.W.3d at 248; *see also* TEX. R. APP. P. 47.1.

### Intentional Infliction of Emotional Distress

In its no-evidence summary judgment motion, Head Start asserted that Jackson had no evidence on the following elements of her claim for intentional infliction of emotional distress: (1) extreme and outrageous conduct; (2) severe emotional distress; and (3) no alternative cause of action. In her third issue, Jackson contends that the trial court erred in granting summary judgment because she provided summary judgment evidence to raise a fact issue on each of the elements.

A party claiming intentional infliction of emotional distress must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the conduct caused the claimant emotional distress; and (4) the emotional distress was severe. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) (per curiam); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

–7–

Intentional infliction of emotional distress is a "gap-filler" cause of action; it is available only when no other alternative cause of action is available to a plaintiff. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998).

Claims for intentional infliction of emotional distress rarely are meritorious because "most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 441 (Tex. App.—Dallas 2014, no pet.) (quoting *Kroger Texas Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)). For a defendant's conduct to be actionable, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817–18 (Tex. 2005). Conduct that is tortious or otherwise wrongful is not necessarily extreme or outrageous. *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001); *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215–16 (Tex. 1999) (an action that is "intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress").

Texas courts follow a strict approach when intentional infliction of emotional distress claims arise in the workplace; an ordinary employment dispute will not give rise to a claim. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999) (citations omitted). Accordingly, employment matters such as "criticism, lack of recognition,

and low evaluations" are not actionable, even if unfair or unpleasant. *Hoffman-La Roche*, 144 S.W.3d at 449 (quoting *Bruce*, 998 S.W.2d at 613). Instead, "an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct," which "exists in only the most unusual of circumstances." *Bruce*, 998 S.W.2d at 613 (citations and footnote omitted).

The trial court determines, in the first instance, whether a defendant's conduct was extreme and outrageous. *Id*. at 616. The issue becomes a question for the jury only when reasonable minds may differ. *Id*. The court considers the context, the relationship between the parties, and the defendant's conduct "as a whole." *Toles v. Toles*, 45 S.W.3d 252, 261–62 (Tex. App.—Dallas 2001, pet. denied); *Tiller*, 121 S.W.3d at 715. The court examines the defendant's conduct throughout the parties' relationship because intentional infliction of emotional distress is most often a "continuing tort." *Toles*, 45 S.W.3d at 262.

Viewed in the light most favorable to Jackson, the summary judgment evidence shows that she entered Henderson's office and, for a moment, observed a consensual sex act. A few days later, Henderson discussed the incident and her conduct with Jackson. Afterwards, Henderson increased Jackson's workload and became critical of Jackson's work performance. Boyd cut off Jackson when Jackson complained about Henderson and refused to assign a new supervisor to Jackson or recognize that Jackson's work environment became stressful as a result of the June

27 incident. Jackson believed Henderson and Boyd were using negative reviews and disciplinary measures as a means to terminate Jackson.

To be sure, Henderson's conduct on June 27, as alleged, was inappropriate and unprofessional. That alone, however, does not render the conduct extreme and outrageous for purposes of maintaining an intentional infliction of emotional distress claim.[3] *Bradford*, 48 S.W.3d at 758 (wrongful conduct is not, standing alone, "extreme and outrageous" conduct). Those Texas courts that have upheld a finding, or found a fact issue, on extreme and outrageous conduct in an employment context have done so only when the plaintiff was the subject of unwanted harassment or advances and usually over an extended period of time. *See, e.g.*, *Bruce*, 998 S.W.2d at 613, 616–17 (supervisor engaged in "pattern of grossly abusive, threatening, and degrading conduct"); *Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 531–33 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (supervisor threatened to fire employee if she did not succumb to repeated sexual advances over three-month period); *Gonzales v. Willis*, 995 S.W.2d 729, 736 (Tex. App.—San Antonio 1999, no pet.) (defendant repeatedly initiated sexually explicit conversations and made "vile" sexual advances in spite of plaintiff's protests and suggested he could

---

[3] Jackson asserts that both Henderson and Boyd "admitted" the "outrageousness" of the "sex act." Henderson, who denied the incident ever happened, testified that, if it did happen, it would be outrageous. Boyd testified that she would not have wanted to see it, it would have been shocking, and she could imagine it being outrageous for Jackson. In any event, the trial court, guided by Texas law, determines if there is evidence to raise a fact issue on whether the conduct was sufficiently extreme or outrageous to serve as a basis for an intentional infliction of emotional distress claim. *See Bruce*, 998 S.W.2d at 616.

help plaintiff get a job in return for sexual favors), *overruled in part on other grounds by Hoffmann–La Roche*, 144 S.W.3d at 447–48. Here, Jackson does not claim any extreme and outrageous conduct initiated against her. Instead, she claims to have happened upon Henderson engaged in sexual conduct a single time with another employee.

Nor does the subsequent conduct of Henderson and Boyd show an extreme and outrageous course of conduct. To the contrary, the sarcastic remarks and negative comments, excessive workload, negative review, and discipline, even if done in a retaliatory manner, are the very workplace insults, indignities, threats, and annoyances that Texas courts have determined do not give rise to a claim for intentional infliction of emotional distress. *See Bruce*, 998 S.W.2d at 613; *Brewerton*, 997 S.W.2d at 216 (negative comments in employee's file, assigning excessive case load, and repeatedly recommending that plaintiff not be allowed to continue on tenure track, as a matter of law, was not extreme and outrageous); *Tex. Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 611–12 (Tex. 2002) (failure to use reasonable care in investigating agent for alleged insurance fraud was not extreme and outrageous); *Porterfield v. Galen Hosp. Corp.*, 948 S.W.2d 916, 921 (Tex. App.—San Antonio 1997, writ denied) (supervisor's conduct, which amounted to poor communication and was discourteous and demanding, was not extreme and outrageous); *Saucedo v. Rheem Mfg. Co.*, 974 S.W.2d 117, 124 (Tex. App.—San Antonio 1998, pet. denied) (swearing at, insulting, and threatening

–11–

employee and blaming him for supervisor's mistakes was not extreme and outrageous); *Garcia v. Andrews*, 867 S.W.2d 409, 412 (Tex. App.—Corpus Christi 1993, no writ) (making sexually suggestive and embarrassing remarks and "mentally" undressing employee was not extreme and outrageous).

The Texas Supreme Court decision in *Bruce* is instructive. 998 S.W.2d 605. Several employees sued GTE based upon their supervisor's behavior, which included sexual innuendo, vulgar obscenities, repeated physical and verbal threats, and demeaning conduct. *Id*. at 613–14. Recognizing that liability may arise when a person with authority engages in repeated or ongoing harassment, the supreme court determined the supervisor's conduct supported the jury finding of intentional infliction of emotional distress. *Id*. at 616–17. The severity and regularity of the supervisor's abusive and threatening conduct, which made the workplace "a den of terror for the employees," brought his behavior into the realm of extreme and outrageous conduct. *Id*. at 617.

The supreme court, however, distinguished those situations in which a supervisor's conduct, even conduct that was an abuse of the supervisor's position of power, amounted to mere insults, indignities, or annoyance. *Id*. at 612–13. The court cautioned that an employer must have latitude to "supervise, review, criticize, demote, transfer, and discipline" its employees in a permissible way and, as a result, extreme and outrageous conduct in the employment context "exists only in the most unusual of circumstances." *Id*.

–12–

The bar an employee must meet to assert a claim for intentional infliction of emotional distress in the workplace is exceptionally high. *See id*. at 617. Clearly, the conduct at issue in this case does not compare to the conduct at issue in *Bruce*. Having considered the evidence in the light most favorable to Jackson, we conclude that she had not produced summary judgment evidence to raise a genuine issue of material fact on the extreme and outrageous conduct element of her claim against Head Start. The evidence shows, at most, an unfortunate employment dispute; there is no evidence of a regular pattern of severely abusive behavior "'so outrageous in character, and so extreme in degree'" as to support a claim for intentional infliction of emotional distress. *See id*. at 611 (quoting *Twyman*, 855 S.W.2d at 621).

Accordingly, because Head Start negated the second element of Jackson's claim for intentional infliction of emotional distress, the trial court did not err in granting summary judgment in Head Start's favor. We overrule Jackson's third issue.

**Conclusion**

We conclude that the trial court properly granted Jackson's no-evidence motion for summary judgment. Having resolved this issue, we need not reach her remaining issues or Head Start's other grounds for summary judgment. *See Merriman*, 407 S.W.3d at 248; TEX. R. APP. P. 47.1.

We affirm the trial court's order.

/Barbara Rosenberg/

BARBARA ROSENBERG
JUSTICE

220448F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MEOSHA JACKSON, Appellant

No. 05-22-00448-CV     V.

HEAD START OF GREATER DALLAS, INC., Appellee

On Appeal from the 298th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-19-19136.
Opinion delivered by Justice Rosenberg.
Justices Pedersen, III and Goldstein participating.

In accordance with this Court's opinion of this date, the trial court's Order Granting Defendant's Motion for Summary Judgment is **AFFIRMED**.

It is **ORDERED** that appellee HEAD START OF GREATER DALLAS, INC. recover its costs of this appeal from appellant MEOSHA JACKSON.

Judgment entered this 6th day of March 2023.