*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

## OPINION

No. 04-07-00858-CV

William A. **NEWMAN**, Ph.D.,
Appellant

v.

Nereu F. **KOCK**, Jr., Jacky Yuk-Chow So, Dan R. Jones, and Ray M. Keck, III,
Appellees

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2006-CVQ-001982-D3
Honorable Elma T. Salinas Ender, Judge Presiding

Opinion by:     Rebecca Simmons, Justice

Sitting:          Alma L. López, Chief Justice
                   Phylis J. Speedlin, Justice
                   Rebecca Simmons, Justice

Delivered and Filed:  August 6, 2008

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART

      This appeal arises from a tenured professor's loss of employment.  Appellant William A.

Newman, a former professor at Texas A & M International University ("TAMIU"), raised

various claims against certain TAMIU officials, all revolving around whether he resigned or was

terminated.  At the time final judgment was rendered, the remaining defendants were Nereu F.

Kock, Jr., Jacky Yuk-Chow So, Dan R. Jones, and Ray M. Keck, III (collectively "Appellees").

We affirm in part and reverse in part the judgment of the trial court and remand this case to the

trial court for further proceedings.

## BACKGROUND

TAMIU hired Newman as a tenured professor of Management Information Systems in 2000. In July 2006, Newman asked TAMIU's Human Resources department ("HR") about the procedure for retiring and filled out several forms relating to retirement. Newman claims he was only making preliminary inquiries to gather information for planning purposes and that completing these forms was part of the process of planning for future retirement. Newman further asserts he was told by HR that, in order to retire, he needed to submit a letter of resignation to his department chair or dean. It is undisputed that Newman never submitted such a letter.

Appellees claim that Newman informed Maritza Arriaga, TAMIU's Associate Director of HR, that Newman intended to leave his job shortly and not tell anyone, and that he had not decided between two dates in August (August 10 and August 15, 2006). Arriaga contacted her superior in HR, informing her about Newman's plan to end his employment with TAMIU without providing notice. That person, in turn, contacted Appellee So, the Dean of the College of Business Administration. So conferred with Appellee Jones, provost of TAMIU, and they agreed that Newman was resigning from TAMIU. On July 21, 2006, So sent a letter by e-mail and by regular mail to Newman "accepting" Newman's "resignation" effective August 15, 2006.

Upon learning of the letter, Newman immediately contacted So by telephone to inform So that he had not resigned. Additionally, on July 28, Newman sent an e-mail to So in which Newman explained that he was only considering retirement and that he had yet to make a decision. Appellee Keck, TAMIU President, sent Newman a letter on August 2, acknowledging Newman's July 28 e-mail and explaining TAMIU's position that Newman had resigned.

On August 17, Newman sent a certified letter to Appellees Kock (the chairman of Newman's department at TAMIU), Kech and So, reiterating that he had not resigned and that he planned to begin teaching classes on August 24 when the semester started. On August 24, Newman met with Jones and So, who presented Newman a settlement agreement by which Newman could teach one more semester before retiring in exchange for not suing TAMIU. After consulting with his attorney, Newman rejected this offer. Newman also requested a hearing before the Board of Regents. In response, Keck sent Newman a letter on September 7 informing Newman that, because he had voluntarily resigned, his request for a hearing with the Board was declined, as the Board does not review voluntary resignations.[1]

On December 1, Newman filed suit against Kock, So and Keck, asserting tort claims, a claim for declaratory relief, and violations of his due process rights under federal law (including 42 U.S.C. § 1983) and his due course rights under state law. Newman initially included TAMIU and the Chancellor of the A & M University System as defendants, but non-suited those defendants in September 2007.[2]

Appellees filed a motion to dismiss the official capacity claims for lack of jurisdiction based on sovereign immunity, a traditional motion for summary judgment on the individual capacity claims based on qualified immunity and official immunity, and a no-evidence motion for summary judgment on most of the individual capacity claims. After a hearing, the trial court granted all of Appellees' motions and entered orders dismissing all of Newman's claims. Newman appeals these orders.

---

[1] Although Newman's letter requesting a hearing with the Board is not part of the record, it is clear from Keck's response letter that Newman requested such a hearing.

[2] Newman added Jones as a defendant in June 2007.

In the course of this appeal, Newman has voluntarily waived his claims for breach of contract and interference with prospective contractual relations, leaving claims for declaratory relief, tortious interference with contract, intentional infliction of emotional distress, and due process/due course violations to be addressed in this appeal.

### CLAIM FOR DECLARATORY RELIEF

Newman asserts that the trial court erred in granting Appellees' plea to the jurisdiction on his claim for declaratory relief against Appellees in their "official capacity" only. He contends that sovereign immunity is inapplicable because he is not seeking to impose monetary liability against the government. *See Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) (sovereign immunity waived for declaratory judgment claim seeking declaration that statute is unconstitutional).

A plaintiff who sues the State must establish the State's consent to suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Otherwise, sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *Id.* When sued in their official capacity, governmental officials, like Appellees, are officers of the agency and, therefore, entitled to sovereign immunity to the same extent the agency is. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A trial court order granting a jurisdictional plea based on sovereign immunity is reviewed de novo. *Id.*

A plaintiff cannot circumvent sovereign immunity by characterizing his suit as a declaratory judgment action for which immunity is waived when the plaintiff seeks relief for which sovereign immunity has not been waived. *Id.* A declaratory judgment claim against state officials that seeks to establish a contract's validity, enforce performance under a contract, or

impose contractual liabilities is a suit against the state for which immunity is not waived. *Id.* at 855.

Through his claim against Appellees in their official capacity, Newman clearly seeks to "establish his contract's validity" and to "enforce performance under that contract." *Id.* This is precisely what the Texas Supreme Court's *IT-Davy* opinion precludes. *Id.* The trial court, therefore, properly granted Appellees' plea to the jurisdiction as to Newman's request for declaratory relief.

## TORTIOUS INTERFERENCE WITH CONTRACT

The elements of a claim for tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) proximate cause; and (4) actual damages or loss incurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995). To establish a prima facie case when the defendant is both a corporate agent and the third party who allegedly induced the corporation's breach, the alleged act of interference must be solely in the defendant's personal interests, "so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract." *Id.* at 796. A corporate officer's mixed motives, to benefit both himself and the corporation, are insufficient to establish liability. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997). Moreover, when determining whether an agent acted against the corporation's interests, the court must consider the corporation's evaluation of the agency's actions. *Morgan Stanley & Co. v. Tex. Oil Co.*, 958 S.W.2d 178, 181-82 (Tex. 1997). If a corporation does not complain about its agent's actions, the agent cannot be held to have acted contrary to the corporation's interests. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998).

Appellees filed a no-evidence summary judgment motion on Newman's tortious interference claim. In reviewing a "no-evidence" summary judgment, the court examines the record in the light most favorable to the nonmovant. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). The burden is on the nonmovant to present more than a scintilla of probative evidence to raise a genuine issue of material fact on each of the challenged elements. TEX. R. CIV. P. 166a(i). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem., Inc.,* 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *King Ranch*, 118 S.W.3d at 751. A no-evidence summary judgment motion should be denied if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

Appellees' no-evidence motion for summary judgment asserted that there was no evidence that any of them took actions that served personal interests to the detriment of TAMIU's, nor was there any evidence of any complaint by TAMIU of their actions in this lawsuit. Newman's response to the no-evidence motion for summary judgment generally avers that Appellees' acts were in bad faith, outside the scope of their authority, and amounted to willful and intentional interference with his employment contract with TAMIU. However, there is no evidence suggesting that Appellees would personally benefit from his absence, nor was there any evidence that TAMIU complained or otherwise disapproved of Appellees' actions. Appellees were, therefore, entitled to summary judgment as to Newman's tortious interference with contract claim. *See Dalrymple v. Univ. of Tex. Sys.*, 949 S.W.2d 395, 405 (Tex. App.—Austin 1997) (affirming summary judgment on tortious interference claim by tenure-track

professor where no evidence that administrators would personally benefit from his dismissal), *rev'd in part on other grounds sub. nom.*, 997 S.W.2d 212 (Tex. 1999); *O'Bryant v. City of Midland*, 949 S.W.2d 406, 415 (Tex. App.—Austin 1997) (affirming summary judgment on tortious interference claim by police officers against police chief and lieutenant where officers presented no evidence that officials would benefit personally from their termination or that their actions harmed city), *aff'd in part and rev'd in part on other grounds*, 18 S.W.3d 209 (Tex. 2000).

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The elements of a claim for intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999). To satisfy the second element, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (internal quotation omitted). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993) (internal quotation omitted).

Intentional infliction claims do not extend to ordinary employment disputes. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005). The fact that an employee was terminated, even if termination was wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous. *Sw. Bell Mobile Sys., Inc. v. Franco*,

971 S.W.2d 53, 54 (Tex. 1998). This is so whether the case involves private or public sector employees. *Dalrymple*, 997 S.W.2d at 216.

Appellees alleged in their no-evidence summary judgment motion that there is no evidence of any extreme or outrageous conduct on their part. Newman's response does not identify any particular conduct that could be construed as "beyond all possible bounds of decency." *Creditwatch*, 157 S.W.3d at 817 (quoting *Twyman*, 855 S.W.2d at 621). The Texas Supreme Court has established very stringent standards for what can constitute "outrageous and extreme" behavior in an employment context such that it would support a claim for intentional infliction of emotional distress. There is no evidence that Appellees' conduct, assuming Newman's account of the events is true, meets this stringent standard. Thus, the trial court properly granted summary judgment on Newman's intentional infliction claim.

## DUE PROCESS AND DUE COURSE CLAIMS

Newman argues that he may bring causes of action under 42 U.S.C. § 1983 and under the state constitution to remedy the injuries done to him by Appellees' denial of his due process and due course rights. *Castellano v. Fragozo*, 352 F.3d 939, 956 (5th Cir. 2003) (due process); *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (due course). Newman asserts that, as a tenured professor, he had a property interest in his continued employment and was, therefore, entitled to due process before that interest could be taken from him. Newman argues that Appellees denied him his due process rights by calling their termination of him a "voluntary resignation," thereby depriving him of his protected interest in his tenured position without notice or a hearing.

In response to Newman's due process and due course claims, Appellees asserted the affirmative defenses of qualified immunity and official immunity and filed a traditional motion for summary judgment claiming that they established these defenses as a matter of law.

## A.     Applicable Law

When a defendant moves for summary judgment based on an affirmative defense, like qualified immunity or official immunity, the defendant must conclusively prove each element of the defense, as a matter of law. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). We view the summary judgment proof in the light most favorable to the nonmovant, and all doubts as to the existence of a genuine issue of material fact are resolved in the non-movant's favor. *See Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

### *Qualified Immunity*

Qualified immunity is a defense to federal law claims that shields governmental officials performing discretionary functions from liability as long as their actions could reasonably be thought to have been consistent with the rights those actions are alleged to violate. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Whether an official may be held personally liable for unlawful official action turns on the "objective legal reasonableness" of the action. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Objective reasonableness is a matter of law for the courts to decide. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). When an official pleads a qualified immunity defense, the usual summary judgment burdens shift such that the plaintiff has the burden to rebut the defense through evidence establishing that the official engaged in conduct that violated clearly established law. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). A right is "clearly established" when its contours are "sufficiently clear that a reasonable official

would understand that what he is doing violates that right." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000).

### *Official immunity*

Official immunity is an affirmative defense that shields governmental employees from personal liability. *Telthorster v. Tennell*, 92 S.W.3d 457, 460-61 (Tex. 2002). A governmental employee is entitled to official immunity for (1) performance of discretionary duties (2) within the scope of the employee's authority (3) in good faith. *Id.* at 461. To obtain summary judgment on the basis of official immunity, a governmental employee must conclusively establish each of these elements. *Id.* To establish good faith, a state employee must show that a reasonable person in the same position could have objectively believed that his conduct was lawful based on the information available to him at the time. *Ballantyne v. Champion Bldrs., Inc.*, 144 S.W.3d 417, 427-28 (Tex. 2004). The proof needed to demonstrate the "good faith" element of official immunity is similar to that needed to establish the federal "objective reasonableness" standard. *Id.* at 427 n.3; *McCartney v. May*, 50 S.W.3d 599, 613 (Tex. App.—Amarillo 1999, no pet.) ("Qualified immunity against section 1983 claims requires proof of effectively the same elements as official immunity under Texas law.").

## B. Scope of Authority

Newman asserts that Appellees did not act within the scope of their authority when they "deemed" his resignation and denied him a hearing. He contends that, because the applicable TAMIU regulations do not provide authority for administrators to "deem" a tenured professor's resignation, and those regulations further provide that only the Board of Regents can dismiss a tenured professor, Appellees acted outside the scope of their authority.

Appellees conclusively established that the actions at issue in this lawsuit were within the scope of their authority. Appellees were all charged with responsibilities regarding employment and management decisions, including the appropriate actions to take when a tenured professor resigns. The decision to "deem" Newman to have resigned and to persist in that position after Newman clearly indicated he had not resigned may have been wrongful, an issue more fully examined below. The fact that the actions may have been wrongful, however, does not, in itself, take them outside the scope of Appellees' authority. *Medina County Comm'rs Court v. Integrity Group, Inc.*, 944 S.W.2d 6, 9 (Tex. App.—San Antonio 1996, no writ) ("Government employees that discharge the duties generally assigned them are acting within the scope of their authority for purposes of immunity. . . . Even if a specific action is wrong or negligent, the employee still acts within the scope of this authority."); *Tex. Dept. of Pub. Safety v. Tanner*, 928 S.W.2d 731, 735 (Tex. App.—San Antonio 1996, no writ) ("Even if a specific action is wrong or negligent, an officer acts within the scope of his authority when performing the general duties assigned.").

## C.     Objective Reasonableness/Good Faith

Newman asserts that Appellees' actions in "deeming" Newman to have resigned were neither objectively reasonable nor in good faith and, therefore, the trial court erred in granting summary judgment for Appellees on their defenses of qualified immunity and official immunity. Appellees respond that their actions regarding Newman's employment status, including "deeming" his resignation and denying his request for a hearing, were objectively reasonable, within the scope of their authority, and in good faith.

### 1.     Right to Notice and a Hearing

Newman asserts that Appellees deprived him of a property interest – his tenured position – without first providing him notice and a hearing, violating his due course and due process

rights. Because the Texas Supreme Court has stated that there is no "meaningful distinction" between "due course of law" under the Texas Constitution and "due process" under the United States Constitution, we look to case law addressing both types of claims in considering Newman's assertion. *Than*, 901 S.W.2d at 929; *see also Govant v. Houston Cmty. Coll. Sys.*, 72 S.W.3d 69, 75 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (in case where college instructor claimed due course rights in continued employment, affirming that "[d]ue course of law . . . exists to prevent government from depriving persons of liberty and property without notice and hearing").

Due process is implicated when the state or its agents deprive a person of a protected liberty or property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). As a tenured faculty member, Newman had a constitutionally protected interest in his employment. *Perry v. Sindermann*, 408 U.S. 593, 599 (1972) (due process); *McCartney v. May*, 50 S.W.3d 599, 607 (Tex. App.—Amarillo 2001, no pet.) (due course); *Owens v. Bd. of Regents*, 953 F. Supp. 781, 786 (S.D. Tex. 1996). Due process in this context means the right to notice and, if the tenured employee wants one, a hearing *before termination*. *May*, 50 S.W.3d at 607-08; *Martine v. Bd. of Regents*, 578 S.W.2d 465, 470 (Tex. Civ. App.—Tyler 1979, no writ) (citing *Roth* and *Perry* for the proposition that "a college teacher [with a protectable property interest in his employment] [i]s entitled to the protection of procedural due process, including notice and a hearing on the reasons for his nonretention . . . before he may be divested of that property right").

## 2. Fact Issue – Resignation or Termination

Newman's constitutionally protected property interest in his tenured position entitled him to notice and a hearing *before* he could be properly deprived of that property interest. *May*, 50 S.W.3d at 607-08. Accordingly, to be entitled to summary judgment on Newman's due process

and due course claims, Appellees had to conclusively establish that an objectively reasonable official could have (1) "deemed" Newman to have retired, and (2) denied Newman's request for a hearing on his claim that he did not retire.

Appellees argue that they acted in good faith because an objectively reasonable official could have concluded that (1) Newman was not terminated, he retired, and (2) even if he did not retire, he caused any loss of due process himself by expressly requesting a hearing with the Board of Regents when no procedure exists in the TAMIU regulations for such a hearing. We disagree.

First, even assuming that an objectively reasonable official could have "deemed" Newman's retirement at the outset, the summary judgment evidence establishes that Appellees persisted in maintaining that Newman had "retired" despite his prompt and unequivocal denial of retirement. At a minimum, this raises a fact issue as to whether the "deemed" resignation was a pre-text for wrongfully terminating him. *See Telthorster*, 92 S.W.3d at 465 ("[G]ood faith is not a mechanical inquiry, but rather turns on the particular facts presented. When an [official] exceeds the bounds of reasonableness, good faith cannot be shown, and the [official] will not enjoy official immunity's protection."); *Colbert v. Hollis*, 102 S.W.3d 445, 449-50 (Tex. App.—Dallas 2003, no pet.) (employee raised fact issue regarding supervisor's good faith in terminating her where she presented summary judgment evidence suggesting that employer fabricated a pre-text to dismiss her).

Second, the fact that Newman asked, well after his resignation had been "deemed," for a particular type of hearing to which he was not entitled is beside the point. *See May*, 50 S.W.3d at 608 (holding that tenured professor's failure to file grievance using school's grievance procedure did not preclude his due process claim; he asked for "a formal hearing" and "his

failure to avail himself of the procedures provided" did not bar claim). Newman's claim is that he did not receive notice or an opportunity for a hearing *before* Appellees "deemed" his resignation, which Newman asserts was actually a termination. *See Martine*, 578 S.W.2d at 467-68.

A fact issue exists as to whether Newman resigned or was terminated. In light of well-established authority that a tenured professor must be given notice and an opportunity for a hearing before termination, we cannot say that an objectively reasonable university official could have terminated Newman's employment without first providing him notice and a hearing. *Roth*, 408 U.S. at 569; *May*, 50 S.W.3d at 607-08. Accordingly, this case must be remanded for further proceedings on Newman's due course and due process claims.

## CONCLUSION

The trial court properly dismissed Newman's official capacity claims because the State has not waived immunity from those claims. The trial court also properly granted summary judgment on Newman's tortious interference with contract and intentional infliction of emotional distress claims because Newman failed to present any evidence to support critical elements of those claims. We, therefore, affirm the judgment of the trial court as to these claims.

The trial court erred, however, in granting summary judgment as to Newman's due process and due course claims. Fact issues exist as to whether Appellees acted in good faith in "deeming" Newman's resignation and denying his request for a hearing. Thus, we reverse the judgment of the trial court as to Newman's due process and due course claims and remand those claims for further proceedings consistent with this opinion.

Rebecca Simmons, Justice