

# IN THE
# TENTH COURT OF APPEALS

## No. 10-12-00011-CV

**ABBAS KHOSHDEL, M.D.,
LLOYD ASCHBERGER, TERRI
PURSLEY, AND JAMIE WILLIAMS,**

                          **Appellants**

 **v.**

**CHARLES GOOSBY,**

                          **Appellee**

### From the 12th District Court
### Walker County, Texas
### Trial Court No. 24,620

## MEMORANDUM OPINION

In this interlocutory appeal, Appellants Abbas Khoshdel, M.D., Lloyd Aschberger, P.A., Terry Pursley, and Jamie Williams[1] appeal the trial court's denial of their motion for summary judgment on their qualified-immunity affirmative defense to Appellee Charles Goosby's claim for deliberate indifference to a serious medical need.

Goosby, an inmate at the Wynne Unit in Huntsville, sued Dr. Khoshdel and

---

[1] The Texas Department of Criminal Justice was also sued, but it is not a party to this interlocutory appeal.

Aschberger, a physician's assistant, for their role in the treatment of Goosby's broken arm in the Wynne Unit. He sued Pursley (an administrative associate in the Wynne Unit infirmary) and Williams (a practice manager in the Wynne Unit infirmary) because they did not act in getting proper medical treatment for him, and he further alleged that Williams failed to process his medical grievance as an emergency grievance.

Appellants moved for summary judgment on their affirmative defense of qualified immunity from suit on Goosby's deliberate-indifference claim.

> Section 1983 creates a private right of action to vindicate violations of rights, privileges, and immunities secured by the Constitution and laws of the United States. *Rehberg v. Paulk*, 132 S.Ct. 1497, 1501 (2012). A prison official's deliberate indifference to a substantial risk of serious harm to a prisoner violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is an extremely high standard to meet. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). To establish deliberate indifference, a prisoner must show that the prison official knew of and disregarded an excessive risk to the prisoner's health or safety. *Farmer*, 511 U.S. at 837. The prisoner must show both that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the official actually drew the inference. *Id.*

*Heirs of Del Real v. Eason*, 374 S.W.3d 483, 486-87 (Tex. App.—Eastland 2012, no pet. h.).

"An official's failure to perceive and to alleviate a risk is not an infliction of punishment. Moreover, negligent medical treatment is not a violation of section 1983." *Tex. Dep't of Crim. Justice v. Thomas*, 263 S.W.3d 212, 219 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citations omitted). Evidence of inadvertent failure to provide medical care or negligent diagnosis is insufficient to establish "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. *Cole v. Frizzell*, No. 13-07-

00092-CV, 2008 WL 4117216, at *3 (Tex. App.—Corpus Christi Aug. 14, 2008, no pet.) (mem. op.) (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (holding that "inadvertent failure to provide adequate medical care" fails to establish the requisite culpable state of mind)).

> "[T]he facts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (citing *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981)); *County of El Paso*, 180 S.W.3d at 863 (holding that an inmate must prove that a jail official was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that the jail official actually drew such an inference). Specifically, a plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson*, 759 F.2d at 1238); *County of El Paso*, 180 S.W.3d at 863. Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos*, 41 F.3d at 235 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)); *County of El Paso*, 180 S.W.3d at 868.

*Davis v. Barnett,* No. 02-09-00207-CV, 2010 WL 3075670, at *4 (Tex. App.—Fort Worth Aug. 5, 2010, no pet.) (mem. op.).

> Qualified or official immunity from suit is available … to government officials sued in their individual capacities under section 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982); *see also City of Hempstead v. Kmiec,* 902 S.W.2d 118, 120 n.1 (Tex. App.—Houston [1st Dist.] 1995, no writ) (noting that "the term 'official immunity' is confusing because official immunity covers acts performed by a government official in the person's individual capacity, not in the person's official capacity"). Government officials performing discretionary functions have qualified immunity from a suit for damages under section 1983 so long as the official's conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would be aware. *Padilla v. Mason*, 169 S.W.3d 493, 502 (Tex. App.—El Paso 2005, pet. denied); *Scott v. Britton*, 16 S.W.3d 173, 180 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

A legal right is "clearly established" when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987).

When a governmental official asserts the affirmative defense of qualified immunity by pleading good faith and demonstrating that his actions were within his discretionary authority, the summary judgment burden shifts to the plaintiff to show that the defendant's conduct violated clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Newman v. Kock*, 274 S.W.3d 697, 705 (Tex. App.—San Antonio 2008, no pet.); *Thomas v. Collins*, 860 S.W.2d 500, 503 (Tex. App.—Houston [1st Dist.] 1993, writ denied). The plaintiff must show: (1) the official's conduct violated a federally guaranteed right; (2) the right was clearly established; and (3) the official's conduct was objectively unreasonable in light of the clearly established right. *Thomas*, 860 S.W.2d at 503. Objective reasonableness is a question of law for the court when deciding qualified immunity in a section 1983 action. *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998); *see also Poteet v. Sullivan*, 218 S.W.3d 780, 792 (Tex. App.—Fort Worth 2007, pet. denied) (recognizing that objective reasonableness is a matter of law).

*Hill v. Trinci*, No. 14-10-00862-CV, 2012 WL 3016855, at *3-4 (Tex. App.—Houston [14th Dist.] July 24, 2012, no pet. h.) (mem. op.); *see also Livingston v. Taylor*, No. 13-07-00690-CV, 2009 WL 2397542, at *2-3 (Tex. App.—Corpus Christi Aug. 6, 2008, no pet.) (mem. op.); *Thomas*, 263 S.W.3d at 219.

In deciding whether the medical staff was entitled to qualified immunity, we apply a bifurcated analysis. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)[, *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)]. First, we determine whether the medical staff's alleged conduct violated a constitutional right. *Id.* Second, we determine whether the right was clearly established; that is, whether it would be clear to a reasonable official that his conduct violated that right. *Id.* The threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *Id.* If the facts do not show a constitutional violation, the official is entitled to immunity. *Id.* If, on the other hand, violation of a constitutional right is shown by the facts alleged, the next step is to

determine whether that right was clearly established at the time of the alleged violation. *Id.*

*McBride v. Tex. Dep't of Crim. Justice,* No. 13-07-00130-CV, 2008 WL 3971102, at *3 (Tex. App.—Corpus Christi Aug. 28, 2008, pet. denied) (mem. op.). Courts now have discretion in deciding which of the two prongs of the *Saucier* qualified-immunity analysis should be addressed first. *Pearson,* 555 U.S. at 236, 129 S.Ct. at 818.

The summary-judgment evidence consists of Goosby's prison medical records and grievances, the affidavit of Bobby Vincent, M.D., the Huntsville District Medical Director for the University of Texas Medical Branch, Correctional Medical Care (UTMB-CMC), and the affidavit of Isaac J. Saxon, Jr., the Cluster/District Practice Manager for the Northwest District of the University of Texas Medical Branch, Correctional Medical Care.

It is undisputed that Goosby fell in the shower and fractured his right arm (distal radius) in the early morning hours of July 18, 2008. Within hours of the fall, Goosby was transported by van to the East Texas Medical Center Trinity Hospital (a "free-world" hospital), where he received an x-ray, a splint, and a recommendation that he be given Tylenol #3 for pain. Aschberger evaluated Goosby later that day and ordered additional x-rays, Darvocet N-100 (a narcotic pain reliever similar to Tylenol #3), Motrin (800 mg), and continued use of the splint. Aschberger also submitted an expedited request for a consultation with an orthopedist with UTMB-CMC in Galveston. The evidence then reflects the following events:

- On July 21, Aschberger reevaluated Goosby, ordered a cast for four weeks, re-ordered the pain medication, and advised Goosby to keep his appointment with

the UTMB orthopedist. Goosby ended up missing this initial appointment because of a norovirus outbreak at the Wynne Unit that led to a unit-wide quarantine and lockdown. Over the next two days, Aschberger changed Goosby's work restriction so that he was medically unassigned to work, and Aschberger ensured that Goosby had access to the Darvocet at the "pill window."

- On August 4, Goosby complained of pain, and the next day Aschberger saw him and not only ordered the requested medication but changed Goosby's housing restriction to include a low-bunk restriction and ground restriction.

- On August 19, Dr. Abbas Khoshdel evaluated Goosby. Because Goosby had missed his initial appointment, Dr. Khoshdel submitted a second request for an expedited consultation with a UTMB orthopedist.

- On September 3, Goosby submitted an I-60 requesting that Dr. Khoshdel submit another request for an expedited consultation with a UTMB orthopedist because Goosby had again missed his scheduled appointment, this time because of Hurricane Gustav, which caused the temporary closure of the UTMB facility in Galveston.

- On September 15, Goosby submitted another I-60, again requesting that Dr. Khoshdel submit request for an expedited consultation with a UTMB orthopedist and referring to another storm. This reference was to Hurricane Ike, which struck Galveston on September 13 and caused major damage to the UTMB facility, which had been evacuated and had to close because of the damage.

- On October 3, Aschberger saw Goosby, removed the cast, and took further x-rays to check on the arm's healing status. He also recommended Naprosyn for pain.

- On October 9, Aschberger followed up with Goosby upon receiving the radiology report from the October 3 x-rays and gave Goosby a 90-day medical pass. Aschberger also submitted another expedited request for an orthopedist consultation, noting that Goosby's previously scheduled appointments had been canceled because of the norovirus quarantine and the hurricanes.

- On October 16, Goosby submitted an I-60 complaining of pain and requesting reapplication of the cast. Aschberger saw Goosby the next day, ordered and applied a splint, and recommended continued use of Naprosyn.

- On October 23, Goosby was seen via Digital Medical Services (DMS), a means of seeing the patient via video by staff at a remote unit, by the UTMB Galveston orthopedics staff. He was diagnosed with a non-union of the distal right radius,

and surgery was recommended and was to be scheduled for mid-November. Dr. Natividad, the orthopedic surgeon, had apparently anticipated that the UTMB hospital in Galveston would be reopened by then, but it remained officially closed until January 2009. The closure led to a surgery backlog, and Goosby's surgery did not occur until February 5, 2009.

- On November 21, Goosby submitted an I-60 complaining of pain and inquiring whether his surgery had been scheduled. He was informed that the UTMB hospital in Galveston was not operational and was being repaired and that the scheduling would be handled when the hospital returned to full operation.

- On December 1, Goosby filed a Step 1 Grievance complaining of the delays in treatment and requesting that he be sent to an outside facility for treatment. Pursley informed Goosby that the grievance was forwarded to the medical department. Williams responded by noting Goosby's prior treatment, the cancelled appointments and their reasons, and that his surgery was scheduled at that time for January 2009.

- On December 2, Goosby complained again of pain and was prescribed the anti-inflammatory drug Mobic by Michael Dome, another physician's assistant. Dome also found that a referral to a "free-world" medical facility was not necessary.

- On December 21, Goosby submitted an I-60 requesting renewal of his expiring prescription and splint pass. Aschberger saw Goosby the next day and renewed both items.

- On December 23, Dr. Khoshdel ordered an x-ray in preparation for Goosby's December 27 DMS visit with the orthopedics staff.

- On January 11, 2009, Goosby complained again of pain, and on January 14 was prescribed Nortiptyline.

- On February 5, 2009, Goosby underwent open reduction internal fixation surgery.

In his affidavit, Dr. Vincent states that UTMB-CMC is contracted to provide health care to TDCJ offenders (inmates) and that CMC Scheduling in Galveston makes all specialty (such as orthopedics) appointments and surgical scheduling. No unit physician, physician's assistant, practice manager, or administrative assistant has the

ability to schedule or prioritize specialty appointments or surgeries. Dr. Vincent further states that, because Goosby's arm was either in a cast or a splint, he did not have an acute medical condition that would have qualified him to be sent to a "free-world" hospital.

In their first issue, Appellants assert that Goosby has not established deliberate indifference to a serious medical need. The gist of Goosby's deliberate-indifference claim against Appellants is that they delayed surgery and that they (including Williams and Pursley)[2] failed to send him to a "free-world" hospital for surgery during the time when he could not be surgically treated at UTMB Galveston.

Indulging all reasonable inferences in favor of Goosby and taking all evidence favorable to him as true, we conclude that Appellants met their burden of showing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on the issue of qualified immunity. The summary judgment evidence does not indicate that Appellants were deliberately indifferent to Goosby's medical needs.

A delay in medical care violates the Eight Amendment only if it is due to deliberate indifference and the delay results in substantial harm. *Mendoza v. Linaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *see also Smith v. Harris*, 401 Fed. Appx. 952, 953 (5th Cir.

---

[2] In his brief, Goosby asserts that Williams and Pursley had the authority to send him to a "free-world" facility. We assume without deciding that they did, but we also hold that, in their administrative roles, including their processing of Goosby's grievance, Goosby has not demonstrated deliberate indifference to his medical needs in violation of his constitutional rights. *See Criollo v. Milton*, 414 Fed. Appx. 719, 721 (5th Cir. 2011) (affirming dismissal of deliberate-indifference claim against prison's practice manager and program administrator because their role in grievance process was no role in inmate's medical treatment); *see also Marquez v. Woody*, 440 Fed. Appx. 318, 322 (5th Cir. 2011) (affirming summary judgment on deliberate-indifference claim against prison's practice manager, who had no role in providing medical care to inmate).

2010). As for the missed and delayed appointments and the delayed surgery, the record is plain that Appellants had no control over scheduling with UTMB-CMC, and Goosby has not shown deliberate indifference for that reason. Goosby also cannot show deliberate indifference for the delayed surgery because the record shows that delays were caused by a virus quarantine, two hurricanes, and the closure of the UTMB Galveston hospital for months because of the damage caused by Hurricane Ike.

Furthermore, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001). The evidence in this case plainly shows that Goosby consistently received medical care (x-rays, a cast and splints, and medication) while he was waiting for surgery. *See Fails v. DeShields,* 349 Fed. Appx. 973, 976 (5th Cir. 2009) ("Deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment.").

As for Goosby's primary complaint that Appellants should have sent him to a "free-world" hospital for surgery when he was unable to have surgery at UTMB Galveston, the only summary judgment evidence is Dr. Vincent's affidavit testimony that, because Goosby's arm was either in a cast or a splint, he did not have an acute medical condition that would have qualified him to be sent to a "free-world" hospital. Goosby's disagreement with this medical judgment cannot establish deliberate indifference. "An inmate's disagreement with the kind of medical treatment that he has received is insufficient as a matter of law to state an Eighth Amendment violation."

*County of El Paso v. Dorado,* 180 S.W.3d 854, 868 (Tex. App.—El Paso 2005, pet. denied) (citing *Norton v. Dimazana,* 122 F.3d 286, 291 (5th Cir. 1997), and *Young v. Gray,* 560 F.2d 201, 201 (5th Cir. 1977)); *see Lagaite v. Uy,* 347 S.W.3d 890, 892 (Tex. App.—Amarillo 2011, no pet.) ("While it is true that inmates are entitled to medical care, they are not entitled to the type of care they choose.") (citations omitted).

The summary judgment evidence does not indicate that Appellants knew of and disregarded an excessive risk to Goosby's health or safety. Therefore, Goosby failed to demonstrate deliberate indifference to his medical needs in violation of his constitutional rights. Having failed to find such a violation, our analysis is complete. *See McBride,* 2008 WL 3971102, at *4 (citing *Saucier,* 533 U.S. at 201, 121 S.Ct. at 2156). Appellants are entitled to qualified immunity from suit on Goosby's claims. Appellants' first issue is sustained, and we reverse the trial court's denial of their motion for summary judgment. We render judgment that Goosby take nothing on his section 1983 claim against Appellants because they have qualified immunity from suit. We remand this case for further proceedings consistent with this opinion.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Reversed and rendered and remanded
Opinion delivered and filed November 1, 2012
[CV06]