

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-11-00298-CV

Mary L. **JAMES**,
Appellant

v.

**SHAVON LTD.**, Shavon Asset Management, LLC, Guilott Management Trust, Guilott Realty,
Inc., Debra Gay Guilott, and Western Title Co.,
Appellees

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. CV-08-372
Honorable N. Keith Williams, Judge Presiding

Opinion by:  Rebecca Simmons, Justice

Sitting:  Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  December 5, 2012

AFFIRMED

In a dispute over a real estate transaction, Mary L. James sued Western Title of Bandera, Inc. for statutory fraud, tortious interference with contract, and breach of fiduciary duty. The trial court granted Western Title's motion for summary judgment. In her sole issue on appeal, James asserts the trial court erred because she raised genuine issues of material fact on each of her claims. We affirm the trial court's judgment.

**BACKGROUND**

In August 2008, James entered into a contract to sell certain real property to Shavon, Ltd. Western Title was selected as the escrow agent. James failed to perform at the first attempted closing. Shavon sued James for breach of contract and sought specific performance.[1] The parties signed a mediated settlement agreement (MSA), which was incorporated into the sales contract. Shortly before the second attempted closing, a dispute arose between Shavon and James concerning the condition of the property and the price to be paid. Shavon asserted that the property's electrical service "meter loop" had been removed, and Shavon insisted on a reduced price. James did not agree, and the second closing also failed. Thereafter, James amended her petition and sued Western Title for statutory fraud, tortious interference with contract, and breach of fiduciary duty for its actions surrounding the second closing. The trial court granted Western Title's traditional motion for summary judgment and dismissed all of James's claims.

In her brief, James raised six issues. However, after the briefs were filed, James notified this court that she had settled all issues with all parties in this appeal except those between James and Western Title; she moved this court to dismiss all other issues. Therefore, we only consider James's issue five—whether the trial court erred in granting Western Title's traditional motion for summary judgment against James's claims of statutory fraud, tortious interference with contract, and breach of fiduciary duty.

**STANDARD OF REVIEW**

We review the grant of a traditional summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "We review the evidence presented in the motion

---

[1] The case was originally styled Shavon, LTD. v. Mary L. James. James filed a counterclaim naming Shavon Asset Management, LLC., Guilott Management Trust, Guilott Realty, Inc., and Debra Gay Guilott, as third party defendants.

and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848; *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We "indulg[e] every reasonable inference in favor of the nonmovant and resolv[e] any doubts against the [movant]." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). A defendant moving for traditional summary judgment may prevail if it conclusively disproves at least one essential element of each of the plaintiff's claims. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995).

## STATUTORY FRAUD

In her first complaint on appeal, James asserts the trial court erred in dismissing her claim against Western Title for statutory fraud.

### A. Applicable Law

The Texas Business & Commerce Code, as did its predecessor statute, creates a cause of action for fraud against a person who makes a false representation or promise "in a transaction involving real estate." *See* TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009).[2] The statute does not create a cause of action for a seller against a title insurance company or escrow agent because the transaction between them is "incidental to [a] transaction in real estate" but is not itself "a transaction involving real estate." *See id.*; *Am. Title Ins. Co. v. Byrd*, 384 S.W.2d 683, 684–85 (Tex. 1964) (rejecting a property purchaser's statutory fraud claim against a title

---

[2] Section 27.01's predecessor was article 4004 of the Revised Civil Statutes; it was repealed when the Texas Business and Commerce Code was adopted in 1967. *See* Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, sec. 27.01, 1967 Tex. Gen. Laws 2343, 2603.

insurance company because the transaction between the purchaser and the title company was for title insurance, not for real estate). Further, "[Texas Business & Commerce Code section 27.01] 'is applicable only when a conveyance of the property has been made, and not where there is merely a contract to convey.'" *Stanfield v. O'Boyle*, 462 S.W.2d 270, 271 (Tex. 1971) (quoting *Rawdon v. Garvie*, 227 S.W.2d 261, 265 (Tex. Civ. App.—Dallas 1950, writ ref'd n.r.e.)).

**B.  Analysis**

James's summary judgment evidence shows James signed a contract to convey real property to Shavon. The sales contract states that Western Title will provide (1) Shavon with title insurance at James's expense, and (2) escrow services to James and Shavon for their real estate transaction; it also states that Western Title "is not . . . a party to this contract." The James-Western Title transaction for title insurance and escrow services was incidental to the real estate transaction between James and Shavon, and thus was outside the scope of the statute. *See Am. Title Ins. Co.*, 384 S.W.2d at 684–85. Further, the summary judgment evidence shows a contract to convey real estate; it does not show that the property was ever conveyed. Thus, even if James's transaction with Western Title was somehow within the statute's scope of a real estate transaction, James's statutory claim would still fail because the statute does not apply when there is merely a contract to convey. *See Stanfield*, 462 S.W.2d at 271.

Considering the summary judgment evidence in the light most favorable to James and resolving all inferences in her favor, the summary judgment evidence nevertheless conclusively disproves at least one essential element of James's statutory fraud claim. *See Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848. We overrule James's first complaint.

**TORTIOUS INTERFERENCE WITH CONTRACT**

In her second complaint, James contends the trial court erred when it dismissed her claim that Western Title tortiously interfered with the MSA.

## A. Elements of Tortious Interference With Contract

A plaintiff asserting a tortious interference claim must prove four elements: (1) a contract exists; (2) the defendant "willfully and intentionally interfered with that contract;" (3) the defendant's interference proximately caused the plaintiff's damage; and (4) the plaintiff "suffered actual damage or loss." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002); *Newman v. Kock*, 274 S.W.3d 697, 702 (Tex. App.—San Antonio 2008, no pet.). A defendant is entitled to a traditional summary judgment in its favor if it conclusively disproves at least one essential element of each of the plaintiff's claims. *See Elliott-Williams Co.*, 9 S.W.3d at 803; *Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d at 476–77.

## B. Analysis

In her petition, James alleged that Western Title tortiously interfered with the performance of the MSA because Western Title failed to produce closing documents that reflected the MSA purchase price. In its traditional motion for summary judgment, Western Title insisted that it did not interfere with the contract between James and Shavon and it was entitled to judgment as a matter of law. Because Western Title was the movant, we are bound to accept James's summary judgment evidence as true, and make reasonable inferences in James's favor. *See Mayes*, 236 S.W.3d at 756; *Nixon*, 690 S.W.2d at 548–49.

Accepting James's summary judgment evidence as true, we assume Western Title intentionally refused to present closing documents to James at the MSA price and was only willing to produce closing documents at Shavon's price. But the summary judgment evidence

does not show that Western Title had any duty to prepare closing documents at the MSA price. According to the sales contract that James signed, Western Title was the escrow agent; it was not responsible for James's or Shavon's performance or nonperformance of the sales contract. Similarly, the MSA that James signed does not impose any requirement on Western Title for the parties' performance or nonperformance of the MSA. No provision of either the sales contract or the MSA requires Western Title to produce closing documents at James's sole discretion. Further, we have found no common law or statutory authority that required Western Title to present James with closing documents that James and Western Title knew would not be acceptable to Shavon.

Taking James's summary judgment evidence as true and resolving reasonable inferences in her favor, we nevertheless conclude as a matter of law that Western Title's refusal to provide James with closing documents at the MSA purchase price was not interference. *See Butnaru*, 84 S.W.3d at 207 (including interference as an essential element of tortious interference); *Newman*, 274 S.W.3d at 702 (same). Therefore, we determine that Western Title met its burden to conclusively disprove an essential element of James's claim of tortious interference with the MSA, and Western Title was entitled to have the claim dismissed. *See Elliott-Williams Co.*, 9 S.W.3d at 803; *Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d at 476–77. We overrule James's second complaint.

## BREACH OF FIDUCIARY DUTY

Finally, James contends that the trial court erred by dismissing her claim that Western Title breached its fiduciary duty to her "to make full disclosure" and "to remain neutral."

## A. Escrow Agent's Fiduciary Duty

"An escrow agent owes a fiduciary duty to both parties to a contract." *Trevino v. Brookhill Capital Res., Inc.*, 782 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1989, writ denied). *See generally Home Loan Corp. v. Tex. Am. Title Co.*, 191 S.W.3d 728, 731–34 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (discussing an escrow agent's duty of disclosure). "This fiduciary duty consists of: (1) the duty of loyalty; (2) the duty to make full disclosure; and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it." *Trevino*, 782 S.W.2d at 281; *see also Home Loan Corp.*, 191 S.W.3d at 731–34.

## B. Analysis

As the escrow agent for the sales contract between James and Shavon, Western Title had a duty to fully disclose information to James. *See Trevino*, 782 S.W.2d at 281; *see also Home Loan Corp.*, 191 S.W.3d at 731–34. However, James presents no authority, and we have found none, that shows Western Title's failure to present closing documents to her at a price that she knew Shavon had already rejected breached Western Title's duty of disclosure or any obligation to remain neutral. James's own summary judgment evidence shows James knew before she went to the second attempted closing that Shavon would not close at the MSA price. Western Title's unrebutted summary judgment evidence confirms that James knew Shavon's intentions and shows Western Title disclosed Shavon's intentions to James. James misinterprets Western Title's disclosure of Shavon's intentions to her—by providing closing documents at Shavon's price—as Western Title's advocacy on behalf of Shavon.

Accepting James's summary judgment evidence as true and resolving reasonable inferences in her favor, we nevertheless conclude that Western Title's refusal to provide James

with closing documents at the MSA purchase price does not constitute a failure to disclose information to James or a breach of Western Title's fiduciary duty to James. *See Home Loan Corp.*, 191 S.W.3d at 733–34; *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848. We overrule James's third complaint.

### CONCLUSION

Having reviewed the evidence in the light most favorable to James, and having resolved reasonable inferences in James's favor, we conclude that Western Title conclusively disproved at least one essential element of James's claims of statutory fraud, tortious interference with contract, and breach of fiduciary duty. Thus, Western Title was entitled to judgment as a matter of law. Therefore, we affirm the trial court's judgment.

Rebecca Simmons, Justice